# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

EDUARDO TORRES,

    Plaintiff

  v.

CAROLYN W. COLVIN,
Commissioner of the Social Security
Administration

    Defendant

CIVIL ACTION NO. 1:14-CV-01208

(KANE, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

  This is an action brought under 42 U.S.C. §§405(g) and 1383(c)(3), seeking

judicial review of the partially favorable decision of the Commissioner, in which

Eduardo Torres was awarded Title XVI benefits beginning April 25, 2011, and was

denied benefits under Title II and Title XVI of the Social Security Act for the period

between October 30, 2009 and April 24, 2011.  Jurisdiction is conferred upon this

Court pursuant to 42 U.S.C. § 42 U.S.C. §§405(g) and 1383(c)(3), and this matter has

been referred to the undersigned Magistrate Judge for the preparation of a report and

recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule

72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, we recommend that the final decision of the Commissioner of Social Security be **VACATED** and this case be **REMANDED** for further proceedings consistent with this report.

## I.   BACKGROUND AND PROCEDURAL HISTORY[1]

On February 16, 2007, Torres was admitted into intensive care after he presented to the Pocono Medical Center emergency department with complaints of upper abdominal pain, chills, hematemesis (vomiting blood) and melena (tarry feces associated with upper GI bleeding).   (Admin Tr. 216).   Torres received a blood transfusion on February 17, 2007, and was transferred to St. Luke's Hospital. (Admin Tr. 223). At St. Luke's Hospital, a CT scan revealed evidence suggesting the presence of varices, and Torres was diagnosed with bleeding in his stomach and esophagus, alcoholic liver disease, cirrhosis, and alcohol abuse.   (Admin Tr. 435, 444, 453). Torres was discharged from St. Luke's Hospital on February 23, 2007.   (Admin Tr. 436).   However, three days later he returned to the Pocono Medical Center with complaints of pain in his lower back and right shoulder.   (Admin Tr. 228).   Torres was diagnosed with back and shoulder pain, and was discharged.   (Admin Tr. 234).

---

[1]   The administrative record reflects that Torres also sought treatment for the mental impairments of major depressive disorder and anxiety disorder.  The ALJ found these impairments to be both medically determinable and severe.  However, because the issues in Torres' brief pertain exclusively to Torres' physical impairment of chronic liver disease we have limited our discussion of the administrative record to the evidence that is relevant to this condition.

On June 12, 2007, Torres was admitted to the Elmhurst Hospital emergency room due to an overdose of Lorazepam combined with alcohol consumption. (Admin Tr. 125). Torres later admitted that he ingested the Lorazepam because he felt depressed and hopeless. (Admin Tr. 138). Torres was transferred to the psychiatric ward for treatment, and was discharged on June 19, 2007. (Admin Tr. 178).

On September 11, 2007, Torres presented to the Pocono Medical Center emergency department with complaints of vomiting and diffuse abdominal pain. (Admin Tr. 235). Torres was diagnosed with abdominal pain with the secondary diagnoses of cirrhosis and vomiting, and was discharged. (Admin Tr. 244).

On November 15, 2007, Torres returned to the Pocono Medical Center emergency department with complaints of hematemesis. (Admin Tr. 246). An endoscopy revealed a few grade three varices in the esophagus and cardia. *Id.* Blood was also found in Torres' stomach. He was admitted to intensive care, where four ligation bands were applied to control the bleeding. *Id.* On November 20, 2007, Torres was released from the hospital in stable condition with the discharge diagnoses of delirium tremens, portal hypertension, cirrhosis secondary to alcohol abuse, and hepatic encephalopathy. *Id.*

The record does not document any medical treatment from December 2007 to June 2009.

3

From June 2009 through December 2010, Torres was incarcerated at SCI-Waymart for credit card theft and possession of stolen property.[2]  A June 2009 check-box physical examination was mostly normal, and a mental health evaluation confirmed that no mental health services were required.  (Admin Tr. 254-57).  On March 4, 2010, blood work revealed a low A/G ratio, high bilirubin, high alkaline phosphatase levels, high aspartate aminotransferase (AST) levels, high gamma-glutamyl-transpeptidase levels (G-GTP), high mean corpuscular volume (MCV), and a low platelet count.  (Admin Tr. 268-69).  On April 20, 2010, blood work revealed that Torres had a high level of ammonia in his blood.  (Admin Tr. 267).  On August 27, 2010, blood work revealed a low A/G ratio, high alkaline phosphatase levels, high AST levels, and high G-GTP levels.  (Admin Tr. 261).  On May 18, 2010, trace amounts of ketones and a small amount of bilirubin were detected in a urinalysis study.  (Admin Tr. 265).  On August 28, 2010, Torres' platelet count was low. (Admin Tr. 262).  On December 20, 2010, in a medical release summary, it was noted that Torres suffered from cirrhosis, heptospenomegaly, a history of ascites, and

---

[2]      We note that the records from SCI-Waymart do not include any examination notes or documentation of Torres' health complaints while he was incarcerated.  Thus, it is unclear whether the lab studies detailed above were performed in response to symptoms experienced by Torres.  Further, the records do not provide any indication of the medical significance of these lab results in terms of the severity or progression of Torres' impairment.

questionable positive lab results for Hepatitis C.[3]  (Admin Tr. 253).  It was also noted that Torres had no employment limitations.  *Id.*  However, the signature on this document is illegible, and the precise medical credentials of the individual who conducted this evaluation are unknown.

Upon his release, Torres protectively filed applications for benefits under Title II and Title XVI of the Social Security Act alleging disability due to cirrhosis, anemia, gastro-intestinal bleeding, and gastric varies beginning on October 30, 2009.[4]

An abdominal ultrasound performed on February 12, 2011, revealed that Torres' liver was of normal size, but had diffusely coarsened parenchymal echotexture and nodular contours consistent with cirrhosis.

On April 13, 2011, Torres underwent a esophagogastroduodenoscopy.  (Admin Tr. 399).  This study revealed the impression of esophageal and cardia varices.  *Id.*

In order to fully evaluate Torres' claims, the Social Security Administration

---

[3]     Torres asserts that Hepatitis C testing revealed a viral load of greater than 3200 per mL. (Doc. 9 p. 3).  We note that, this assertion is based on a misinterpretation of the lab results.  Our own review of this lab study reads that Torres' viral load was "<3200" or *less than* 3200. (Admin Tr. 258).  The study also notes that, because Torres' viral load was measured as less than 3200 copies per mL of blood, it was below the limits of detection.  *Id.*

[4]     The administrative record provided by the Commissioner indicates that the Title XVI application, reconsideration of the Title XVI disability determination by the state agency, Title XVI disability determination explanation, or supplemental security income notice are unavailable for inclusion.  Although we have no documentation related to Torres' partially successful application for benefits under Title XVI of the Social Security Act, the parties do not dispute that Torres did file a Title XVI application for benefits.  (Doc. 1 ¶1; Doc. 5 ¶1)(noting that this Court has jurisdiction under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3)).

5

commissioned a consultative examination of Torres' physical impairments by nontreating internist, Dr. Sethuraman Muthiah.  (Admin Tr. 280-88).  Dr. Muthiah reported the impression of cirrhosis of the liver, hypertension, and history of duodenal ulcer.  Dr. Muthiah also assessed that, regarding work-related physical activities, Torres could: lift up to twenty pounds and carry up to fifteen pounds frequently; stand and walk up to two hours per eight-hour workday; sit between three and four hours per eight-hour workday; and, occasionally bend, kneel, stoop, crouch, balance, and climb. Dr. Muthiah also recommended that Torres work in an environment where he would not  be exposed to heights, moving machinery, or temperature extremes.  Dr. Muthiah's assessment did not include any opinion as to how long Torres had been experiencing his symptoms at the level of severity observed on April 25, 2011.

Torres' claims were initially denied on June 16, 2011.  Thereafter, Torres sought, and was granted, an opportunity to have his claims reviewed during an administrative hearing.

In October 2011, Torres presented to Elmhurst Hospital because he experienced chest pain and difficulty breathing after he ingested beer with Dominican rum.  (Admin Tr. 316).  While in the hospital, Torres had three episodes of coffee ground emesis (vomit that contains coagulated blood).  (Admin Tr. 338).  A CT scan of Torres' head revealed mild cerebral cortical atrophy that was not age-appropriate.

(Admin Tr. 382).   Torres was stabilized and discharged three days later with the diagnosis of altered mental status, and alcoholic gastritis with hemorrhage.  (Admin Tr. 308).

Treatment records dated January 3, 2012, reflect that Torres is in the end stages of liver disease.  (Admin Tr. 390).

An abdominal ultrasound performed in March 2012 showed moderate hepatic cirrhotic change from the prior study in February 2011.  (Admin Tr. 409).  Records from St. Luke's Hospital reflect that Torres continued to receive outpatient care at that facility through April 2012. On April 12, 2012, an esophagogastroduodenoscopy revealed small varices in Torres' esophagus, and moderate varices in Torres' cardia. (Admin Tr. 408).

On October 23, 2012, Torres, with the assistance of counsel, appeared and testified before ALJ Timothy Wing in Wilkes-Barre, Pennsylvania.   Impartial vocational expert ("VE") Nadine Henzes also appeared and testified.

During this hearing, Torres testified that his chronic liver disease causes him to forget things, and results in stomach pain, vomiting, nausea, and bleeding.  He testified that his liver is functioning at approximately 5%.  (Admin Tr. 598).  Torres also reported that he is on the transplant list for a new liver.  (Admin Tr. 601).  As far as his vocational abilities, Torres reported that he has an eighth grade education and

7

was in special education in all subjects. (Admin Tr. 592). Torres also admitted that he did not read or write very well, and could not complete simple forms, like a job application, unassisted. (Admin Tr. 593). Before he was overwhelmed by his illness, Torres worked in the restaurant industry as a server, janitor, and kitchen helper. (Admin Tr. 595).

On November 29, 2012, the ALJ found that Torres was not disabled prior to September 30, 2010, his date last insured, thus denied his Title II application in its entirety due to Torres' inability to meet the insured status requirement. With respect to Torres' Title XVI application, however, the ALJ found that Torres was under a disability beginning April 25, 2011. Torres requested that the Appeals Council review the ALJ's partially favorable decision. Torres' request for review was denied.

Thereafter, Torres initiated this action on June 23, 2014, by filing a complaint alleging that the final decision of the Commissioner is not supported by substantial evidence and requesting that it be reversed. (Doc. 1). On August 25, 2014, the Commissioner filed her answer. (Doc. 5). Together with her answer, the Commissioner filed a copy of the administrative record.[5] (Doc. 6). Having been fully briefed by the parties, this matter is now ripe for resolution. (Docs. 9, 10).

---

[5] Two complete copies of the administrative record were docketed in this case. The first copy appears at Doc. 6 and attachments one through three, a second complete copy of the record is docketed as a fourth attachment.

## II.   STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§423(d)(2)(A), 1382c(A)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

In addition to the above-listed requirements, to receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this framework, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520, 416.920. Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§404.1545, 416.945; SSR 96-8p, 1996 WL 374184. In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §§423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§404.1512, 416.912; *Mason v. Shalala*,

994 F.2d 1058, 1064 (3d Cir. 1993).  Once this burden has been met by the claimant, the Commissioner must show that jobs exist in significant number in the national economy that the claimant can perform despite his or her impairments at step five. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

Once a final decision is issued by the Commissioner, and that decision is appealed to this Court, our review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by substantial evidence in the record.   *See* 42 U.S.C. § 405(g)(sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  *Mason*, 994 F.2d at 1064.  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not

prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).   "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."  *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003).  The question before this Court, therefore, is not whether Torres is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## III.   THE ALJ'S PARTIALLY FAVORABLE DECISION INFERRING DISABILITY ONSET ON APRIL 25, 2011

In his decision awarding Title XVI benefits and denying Title II benefits, the ALJ found that Torres met the insured status requirements of Title II of the Social

Security Act through September 30, 2010, and proceeded through steps one through five of the five-step sequential evaluation process. At step one, the ALJ found that Torres had not engaged in substantial gainful activity at any time between his alleged onset date of October 30, 2009, and the date of his decision, November 29, 2012. (Admin Tr. 16-17). At step two, the ALJ found that Torres had the medically determinable severe impairments of chronic liver disease, obesity, major depressive disorder, and anxiety disorder. (Admin Tr. 17). The ALJ also found that Torres' history of alcohol abuse to be nonsevere because Torres reported no current use and because his treatment records do not indicate that alcohol abuse contributes to his functional limitations. *Id.* At step three, the ALJ found that Torres does not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin Tr. 17-19).

Before proceeding to step four, the ALJ assessed Torres' RFC. In making this determination, the ALJ is required to weigh the opinion evidence of record in accordance with the mandates of 20 C.F.R. §§404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. The record before the ALJ in this case includes medical source opinions by treating psychologist, Dr. Drago, Ph.D., nontreating internist Dr. Sethuraman Muthiah, M.D., and nonexamining psychologist Anthony Galdieri, Ph.D.

The ALJ was also required to consider Torres' testimony and statements made in the reports and questionnaires submitted in accordance with the mandates of 20 C.F.R. §§404.1529, 416.929, and SSRs 96-4p and 96-7p.  Based on his review of this evidence, the ALJ concluded that ***before*** April 25, 2011, Torres had the RFC to perform light work as it is defined in 20 C.F.R. §§404.1567(b) and 416.967(b) except that:

> the claimant is limited to occupations that require no more than occasional postural maneuvers such as balancing, stooping, kneeling, crouching, crawling, and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders; limited to occupations requiring no more than simple, routine repetitive tasks, not performed in a fast paced production environment, involving only simple work related decisions, and in general, relatively few workplace changes; limited to occupations which require no more than occasional interaction with supervisors, coworkers and members of the general public; and limited to occupations which do not involve the handling, sale, or preparation of alcoholic beverages.

(Admin Tr. 19).  However, the ALJ found that ***beginning on*** April 25, 2011, Torres' RFC was further eroded by the additional limitations that he would "require breaks and absences at will, time off tasks and absences from work of 3-5 times per month due to symptomatology in excess of customary industry allowances." (Admin Tr. 22). The ALJ based this determination on Dr. Muthiah's assessment that Torres could not perform work on a sustained basis given Torres' additional physical limitations, and based on the ALJ's inference that Torres would require unscheduled breaks at will,

and would be off task or absent in excess of the customary industry allowances.[6] (Admin Tr. 22).

At step four, the ALJ found that Torres' RFC, both beginning and before April 25, 2011, precluded the performance of his past relevant work as a kitchen helper, janitor, and server because the demands of these positions exceeded both of the RFC assessments outlined above.  (Admin Tr. 24-25).  At step five, after posing a series of hypothetical questions to the VE, the ALJ found that *before* April 25, 2011, Torres could perform other work that existed in the national economy in significant numbers. The VE testified that an individual with the same vocational factors as Torres, and the same RFC as Torres before April 25, 2011, could perform the representative occupations of folder (DOT 369.687-018), tagger (DOT 229.587-018), and office helper (DOT 239.567-010).  (Admin Tr. 609).  The VE also testified that the occupations collectively exist in approximately 700 jobs in the state economy and 619,000 jobs in the national economy.  *Id.*  However, based on Torres' RFC *beginning* April 25, 2011, the VE testified there were no jobs existing in significant numbers in the national economy that Torres could perform.  *Id.*

---

[6]     No medical source of record expressly opined that Torres would need an unlimited number of unscheduled work breaks or that he would be absent in excess of the customary industry allowances.

Ultimately, the ALJ found that Torres was not disabled under the Act until April 25, 2011. Because Torres' insured status under Title II of the Social Security Act had lapsed prior to that date, the ALJ found that he was not entitled to benefits under Title II. However, because Title XVI of the Social Security Act does not require insured status, Torres was awarded Title XVI benefits beginning April 25, 2011.

## IV. DISCUSSION

There is no dispute that Torres is disabled within the meaning of the Social Security Act. Instead, this case presents a unique dispute concerning the onset of disability.[7] In this case, Torres met the insured status requirement under Title II of the Act through September 30, 2010. In order to be eligible for benefits under Title II of the Act, Torres' conditions must be found disabling prior to that date. As such, the onset of Torres' disability is a crucial factor in this case.

---

[7]    The facts of this case are somewhat unusual. Torres attempts to establish disability onset on a date when he would be prohibited from actually collecting benefits due to his incarceration. *See* 20 C.F.R. §404.468 ("No monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony); 20 C.F.R. §416.211 ("you are not eligible for SSI benefits for any month throughout which you are a resident of a public institution ..."). While the regulations prevent Torres from actually *collecting* benefits between October 30, 2009 (his alleged onset date) and December 22, 2010 (the date he was released from SCI-Waymart), no rule or regulation prevents Torres from using that date to establish his *eligibility* under the Act.

As noted by the Third Circuit, "in cases in which the onset date is critical to the determination of entitlement to benefits, an ALJ must grapple with and adjudicate the question of onset, no matter how difficult." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 548 (3d Cir. 2003). The starting point in determining the date of disability onset is the claimant's allegation as to when disability began.  SSR 83-20, 1983 WL 31249, at *2.  The date alleged by the claimant should be used by the ALJ if it is consistent with *all* the evidence available.  *Id.* At *3.  However, where the alleged onset date is not consistent with the claimant's work history or the medical and other evidence of record the ALJ is required to *infer* disability onset.  *Id.* at *2.

SSR 83-20 also provides that, where disability onset must be inferred, the ALJ *should* call on a medical advisor.  *Id.* at *3.   While SSR 83-20's language is permissive, this Circuit has held that there are times where SSR 83-20 and the substantial evidence rule dictate that an ALJ *must* call upon the services of a medical advisor to assist in inferring onset date, rather than relying on his or her own lay analysis, where evidence is ambiguous in order to insure that the determination is based upon a legitimate medical basis.  *See Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001); *Newell*, 347 F.3d at 549.[8]   Therefore, we are called upon to decide

---

[8]     We note that the parties have not directly referred to SSR 83-20 in their briefs, despite the fact that it appears to be particularly relevant to the only issue Torres raises in this appeal. Instead, Torres generally asserts that the objective evidence that serves as the basis for Dr. Muthiah's

whether the ALJ properly applied the standards established by SSR 83-20 when he decided not to consult a medical expert about the onset of disability, and whether his conclusion that Torres became disabled on April 25, 2011, is supported by substantial evidence.

Here, after concluding that the objective evidence was "insufficient" to substantiate a disabling medical or psychological impairment, the ALJ inferred that Torres' onset of disability was on April 25, 2011. The ALJ did not call upon the services of a medical expert at any point to assist him in inferring disability onset. While, the Third Circuit has found that an ALJ can reasonably infer onset date in cases where he or she has access to adequate medical records relating to the time period before the expiration of the claimant's insured status, *Jakubowski v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 104, 108 (3d Cir. 2007), the Circuit has also consistently remanded for failure to consult a medical expert when an ALJ attempted to infer onset without a medical expert in cases where the records relating to the period of alleged

---

assessment existed prior to his date last insured, and that it could be reasonably inferred than the assessment rendered by Dr. Muthiah pertained to Torres' condition on his date last insured.  (Doc. 9 pp. 8).  Because Torres raises the issue of whether onset date was properly inferred, we construe this as an argument under SSR 83-20 that substantial evidence does not support the ALJ's determination that there was a legitimate medical basis to infer that Torres became disabled on April 25, 2011.

We also note that the ALJ did not cite to this ruling in his decision.  Nevertheless, we find that *if* he conducted the requisite analysis, and *if* his conclusions are supported by substantial evidence, his failure to do so is not fatal.

onset were sparse or nonexistent.  *See e.g. Walton*, 243 F.3d at 709; *Newell,* 347 F.3d

at 549.[9]  Here, like in *Newell*, the ALJ cited to a lack of medical treatment records

prior to Torres' date last insured when he rejected Torres' claim.  Moreover, ALJ

appeared to overlook several blood and urinalysis studies containing abnormal values

performed during the period at issue, and instead focused on a six month gap in

medical treatment between September 30, 2010, and February 2011.[10]   *Id.*

Furthermore, although Dr. Muthiah's medical opinion does support the ALJ's

conclusion that Torres was disabled on April 25, 2011, this opinion does not attempt

to offer any opinion as to when Torres' limitations became disabling, or whether

---

[9]      Several non-precedential opinions contain language suggesting that the Third Circuit's precedential holding in *Walton* is limited to circumstances where: (1) underlying disease is progressive or difficult to diagnose; (2) where medical records are sparse or conflicting; and, (3) where the claimed date of onset is "far in the past."  *See e.g. Bailey v. Comm'r of Soc. Sec.*354 Fed. Appx. 613, 617 (3d Cir. 2009).  Though this case clearly satisfies the first two conditions, it is less clear whether it meets the third.  Torres' alleged onset date (October 30, 2009) was approximately three years before the ALJ hearing (October 23, 2012).  In *Newell*, the Third Circuit held that SSR 83-20 required the ALJ to use a medical advisor to infer an onset date that was less than three years in the past.  *See Newell*, F.3d 541 at 542.  Thus, we find that Torres has met all three of the conditions required to trigger an ALJ's obligation to consult a medical expert pursuant to SSR 83-20.

[10]      The ALJ also failed to afford Torres an opportunity to explain his failure to pursue treatment during this time before citing a lack of medical evidence to discount his allegations with respect to onset date.  *See* SSR 96-7p, 1996 WL 374186, at *7 (noting that although a longitudinal medical record demonstrating a claimant's attempts to seek out and follow medical treatment recommendations lends support to an individual's allegations, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanation that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.").  Because he did not make inquiries as to why there was a gap in treatment, it should not be used as a basis to discount Torres' alleged onset date.

April 25, 2011, was the first date Torres' symptoms existed at that level of severity. As such, we cannot conclude that Dr. Muthiah's opinion substantially supports the ALJ's determination that Torres' liver impairment became disabling on the date of his consultative examination.  The ALJ cannot, consistent with SSR 83-20 and the necessity of establishing an onset date based on substantial evidence simply overlook evidence and draw an inference from the record having no substantial medical support.

For the reasons articulated herein, we find that the ALJ failed to properly apply the standards established by SSR 83-20 when he inferred Torres' onset date, and that as a result of this failure the onset date inferred by the ALJ is not supported by substantial evidence.

## V.   RECOMMENDATION

Accordingly, because it is not supported by substantial evidence, we recommend that the decision of the ALJ be **VACATED** and this case be **REMANDED** to the Commissioner for further proceedings consistent with this report.  On remand, the Commissioner should consult a medical advisor, either during

the new administrative hearing or through interrogatories, in order to ascertain whether Torres' liver disease became disabling prior to his date last insured.

_s/ Joseph F. Saporito, Jr._
**JOSEPH F. SAPORITO, JR.**
**U.S. Magistrate Judge**

**Dated: April 30, 2015**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

EDUARDO TORRES,

                Plaintiff

      v.

CAROLYN W. COLVIN,
Commissioner of the Social Security
Administration

                Defendant

CIVIL ACTION NO. **1:14-CV-01208**

(KANE, J.)
(SAPORITO, M.J.)

## NOTICE

Notice is hereby given that the undersigned has entered the foregoing Report

and Recommendation dated April 30, 2015.  Any party may obtain a review of this

Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen
> (14) days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all parties,
> written objections which shall specifically identify the portions of the
> proposed findings, recommendations or report to which objection is
> made and the basis for such objections. The briefing requirements set
> forth in Local Rule 72.2 shall apply. A judge shall make a de novo
> determination of those portions of the report or specified  proposed
> findings or recommendations to which objection is made and may
> accept, reject, or modify, in whole or in part, the findings or
> recommendations made by the magistrate judge. The judge, however,

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation

may constitute a waiver of any appellate rights.


*s/ Joseph F. Saporito, Jr.*_____
**JOSEPH F. SAPORITO, JR.**
**U.S. Magistrate Judge**

**April 30, 2015**